# EXHIBIT A

*personally (Fe)*
*RECEIVED*

JAN 0 3 2018

LEGAL DEPT

Eric D. Katz | Atty. No. 016791991
David M. Estes | Atty. No. 034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Counsel for Plaintiff*

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, <br><br> Plaintiff, <br><br> vs. <br><br> EMBLEMHEALTH, INC.; GROUP HEALTH INC., d/b/a GHI; EMBLEMHEALTH SERVICES CO., LLC; CITY OF NEW YORK; and ABC CORPS. 1-100, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIV., ESSEX COUNTY <br> DKT. NO. ESX-L-5696-18 <br><br> Civil Action <br><br> **SUMMONS** |

From The State of New Jersey

To The Defendant(s) Named Above:        EmblemHealth Services Co., LLC

    The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN 971, Trenton, New Jersey 08625. A filing fee of $135.00 for Law Division cases or $135.00 for Chancery Division cases, payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment. If you cannot afford an attorney, you may call the Legal Services office in the county where you live. A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

*/s/ Michelle M. Smith*
Michelle M. Smith
Clerk of the Superior Court

Dated:  December 31, 2018

Name of Defendant to be Served:   EmblemHealth Services Co., LLC
Address of Defendant to be Served:  55 Water Street
New York, New York 10041

- 2 -

## DEPUTY CLERKS OF THE SUPERIOR COURT

ATLANTIC COUNTY:
Lori Mooney, Clerk
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401
*LAWYER REFERRAL*
(609) 345-3444
*LEGAL SERVICES*
(609) 348-4200

BERGEN COUNTY:
Kathleen A. Donovan, Clerk
119 Justice Center
10 Main Street
Hackensack, NJ 07601-7968
*LAWYER REFERRAL*
(201) 488-0044
*LEGAL SERVICES*
(201) 487-2166

BURLINGTON COUNTY:
Edward A. Kelly, Jr., Clerk
First Fl., Courts Facility
49 Rancocas Road
Mt. Holley, NJ 08060
*LAWYER REFERRAL*
(609) 261-4862
*LEGAL SERVICES*
(609) 261-1088

CAMDEN COUNTY:
Michael S. Kenting, Clerk
First Fl., Hall of Records
501 Fifth Street
Camden, NJ 08103
*LAWYER REFERRAL*
(609) 364-4520
*LEGAL SERVICES*
(609) 364-2010

CUMBERLAND COUNTY:
John G. Nardelli, Clerk
Courthouse, Direct Filing
Broad & Fayette Streets
Bridgeton, NJ 08302
*LAWYER REFERRAL*
(609) 452-5291
*LEGAL SERVICES*
(609) 451-0003/935-8024

ESSEX COUNTY:
Patricia McGarry Drake, Clerk
236 Hall of Records
465 Dr. Martin Luther King, Blvd.
Newark, NJ 07102
*LAWYER REFERRAL*
(201) 533-1779
*LEGAL SERVICES*
(201) 624-4500

GLOUCESTER COUNTY:
Joseph H. Hoffman, Clerk
First Fl., Court House
1 North Broad Street, P.O. Box 129
Woodbury, NJ 08096
*LAWYER REFERRAL*
(609) 848-4589
*LEGAL SERVICES*
(609) 848-5360

HUDSON COUNTY:
Frank E. Rodgers, Clerk
Superior Court, Civil Records Dept.
Brennan Court House
583 Newark Avenue
Jersey City, NJ 07306
*LAWYER REFERRAL*
(201) 798-2727
*LEGAL SERVICES*
(201) 792-6363

CAPE MAY COUNTY:
Angela F. Pulvino, Clerk
(Law Division Filings)
Box DN-209
Cape May Courthouse, NJ 08210
or
(General Equity Filings)
Box DN-209A
Cape May Courthouse, NJ 08210
*LAWYER REFERRAL*
(609) 463-0313
*LEGAL SERVICES*
(609) 465-3001

MERCER COUNTY:
Albert E. Driver, Jr., Clerk
P.O. Box 8068
209 South Broad Street
Trenton, NJ 08650
*LAWYER REFERRAL*
(609) 890-6200
*LEGAL SERVICES*
(609) 695-6249

MIDDLESEX COUNTY:
Herbert P. Lashomb, Clerk
Court House, East Wing
Lobby Floor/P.O. Box 2633
One Kennedy Square
New Brunswick, NJ 08903-2633
*LAWYER REFERRAL*
(908) 828-0053
*LEGAL SERVICES*
(908) 249-7600

MONMOUTH COUNTY:
Jane Clayton, Clerk
P.O. Box 1262
Court House, East Wing
Freehold, NJ 07728-1262
*LAWYER REFERRAL*
(908) 431-5544
*LEGAL SERVICES*
(908) 747-7400

HUNTERDON COUNTY:
Dorothy K. Tirpok, Clerk
Hall of Records
71 Main Street
Flemington, NJ 08822
*LAWYER REFERRAL*
(609) 788-6112
*LEGAL SERVICES*
(609) 782-7979

SOMERSET COUNTY:
R. Peter Widin, Clerk
Civil/General Equity
New Court House, 3rd Floor
P.O. Box 3000
Somerville, NJ 08876
*LAWYER REFERRAL*
(908) 685-2323
*LEGAL SERVICES*
(908) 231-7400

SUSSEX COUNTY:
Helen C. Ackerman, Clerk
Superior Court, Law Division
49 High Street
Newton, NJ 07860
*LAWYER REFERRAL*
(201) 267-5882
*LEGAL SERVICES*
(201) 383-7400

UNION COUNTY:
Walter G. Halpin, Clerk
First Floor, Court House
Elizabeth, NJ 07207
*LAWYER REFERRAL*
(908) 353-4715
*LEGAL SERVICES*
(908) 354-4340

- 4 -

MORRIS COUNTY:
Alfonse W. Scerbo, Clerk
CN-900
30 Schuyler Place
Morristown, NJ 07960
*LAWYER REFERRAL*
(201) 267-5882
*LEGAL SERVICES*
(201) 285-6911

OCEAN COUNTY:
M. Dean Haines, Clerk
119 Court House
CN-2191
Toms River, NJ 08754
*LAWYER REFERRAL*
(908) 240-3666
*LEGAL SERVICES*
(908) 371-2727

PASSAIC COUNTY:
William L. Kattak, Clerk
Court House

77 Hamilton Street
Paterson, NJ 07505
*LAWYER REFERRAL*
(201) 278-9223
*LEGAL SERVICES*
(201) 345-7171

SALEM COUNTY
John W. Cawman, Clerk
92 Market Street, P.O. Box 18
Salem, NJ 08079
*LAWYER REFERRAL*
(609) 678-8363
*LEGAL SERVICES*
(609) 451-0003

WARREN COUNTY:
Terrance D. Lee, Clerk
Court House
Belvidere, NJ 07823
*LAWYER REFERRAL*
(201) 267-5882
*LEGAL SERVICES*
(201) 475-2010

ESX-L-005696-18   08/13/2018 3:11.03 PM   Pg 1 of 20 Trans ID: LCV20181401261

Eric D. Katz | Atty. No. 016791991
David M. Estes | Atty. No. 034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Counsel for Plaintiff*

|  |  |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER,<br><br>        Plaintiff,<br><br>vs.<br><br>EMBLEMHEALTH, INC.; GROUP HEALTH INC., d/b/a GHI; EMBLEMHEALTH SERVICES CO., LLC; CITY OF NEW YORK; and ABC CORPS. 1-100,<br><br>        Defendants. | SUPERIOR COURT OF NEW JERSEY,<br>LAW DIV., ESSEX COUNTY<br>DKT. NO. ESX-L-_____-18<br><br>*5696*<br><br>Civil Action<br><br><br>**COMPLAINT &<br>JURY DEMAND** |

Plaintiff, North Jersey Brain & Spine Center, by way of Complaint against defendants, alleges as follows:

### INTRODUCTION

1.      Plaintiff North Jersey Brain & Spine Center rendered lifesaving emergency neurosurgical and other medical services to a patient who was covered by a health insurance plan sponsored, funded and/or administered by defendants EmblemHealth, Group Health Incorporated, and City of New York. However, when it came time to pay the bill, defendants issued a gross underpayment amounting to 22¢ on the dollar. Plaintiff attempted negotiating with defendants for months, but defendants refused to honor their statutory, contractual, and other legal obligations. The plan member's employer, the City of New York, and other

defendants instructed plaintiff to bill the patient hundreds of thousands of dollars for emergency medical services that should be covered by defendants -- and this while EmblemHealth's **executives paid themselves generous multi-million-dollar salaries and defendant engaged in a $1 billion scam to cheat its insureds out of appropriate reimbursement.**[1] The law, however, prohibits defendants from forcing patient B.M. to pay more than his copayment or coinsurance for emergency care rendered by an out-of-network provider. This suit is necessary to ensure that NJBSC is correctly reimbursed for the services it has rendered, and that its patient is not unlawfully saddled with costs that should have been paid by defendant(s).

## THE PARTIES

### A.    The Plaintiff

2.    Plaintiff North Jersey Brain & Spine Center ("NJBSC") is a medical practice specializing in neurosurgical procedures and treatment of the brain and spinal cord, and it has its primary office at 680 Kinderkamack Road, Suite 300, Oradell, New Jersey 07649.

3.    At all relevant times, NJBSC was an out-of-network, or non-participating, healthcare provider with respect to defendants, and provided emergency, medically necessary surgical and related medical services to patient B.M., (GHI ID No. 930575760), who is a beneficiary under a healthcare plan sponsored, funded, operated, controlled and/or administered by defendants.

### B.    The Defendants & Related Persons

4.    Defendant EmblemHealth, Inc. ("EH") holds itself out as "a local, neighborhood health plan that has served the New York City area and surrounding communities," and

---

[1]    *See* Campanile, Nonprofit Execs Healthy Wealthy (NY Post Feb. 6, 2012), *available at*, https://nypost.com/2012/02/06/nonprofit-execs-healthy-wealthy/, Marsh, City Lawyer Turns Obscene Medical Debt into $1B Whistleblower Case, *available at*, https://nypost.com/2018/02/27/lawyer-claims-health-insurance-companies-behind-1b-scam/.

sponsored, funded, administered and/or is the fiduciary of the health benefit plan related to patient B.M. EH benefit plans are underwritten by EH companies, including Group Health Incorporated. EH maintains its corporate office at 55 Water Street, New York, NY 10041.

5.    Defendant Group Health Incorporated, doing business as GHI, is one of the largest health insurers in New York, and sponsored, funded, underwrote, administered and/or is the fiduciary of patient B.M.'s health benefit plan. GHI is a subsidiary of EH. GHI maintains its corporate office at 55 Water Street, New York, NY 10041 and/or 441 Ninth Avenue, New York, NY 10001.

6.    Defendant EmblemHealth Services Co., LLC ("EHS") provides administrative services to defendants EH and GHI, and administered and/or is the fiduciary of patient B.M.'s health benefit plan. EHS maintains its corporate office at 55 Water Street, New York, NY 10041.

7.    Defendant City of New York ("NYC") is the employer of the member whose plan provides B.M. with health benefits, and sponsored, funded and/or is the fiduciary of patient B.M.'s health benefit plan. NYC's health benefits program maintains its office at 40 Rector Street, 3rd Floor, New York, NY 10006, and accepts legal service at NYC Department of Finance, 66 John Street, Room 104, New York, NY 10038.

8.    W.M. was an employee of defendant NYC, and entitled to health benefits under a Comprehensive Benefits Plan ("CBP"), which is sponsored, funded and/or administered by defendants EH, GHI, EHS and/or their agents, and resides in Hillsdale, New Jersey.

9.    B.M. was a patient of NJBSC, was a named beneficiary of W.M.'s plan, and was entitled to health benefits under a plan sponsored, funded and/or administered by codefendants, and resides in Hillsdale, New Jersey.

10.    At all relevant times, defendants provided healthcare coverage to and/or administrative services for the health insurance plan of patient B.M.   Defendants' health insurance plan provided out-of-network health, medical and hospital coverage, including emergency services coverage, in New Jersey to the patient of plaintiff -- whether expressly or by operation of law.

11.    Defendants ABC Corps. 1-100 are at present unidentified, fictitious entities that consist of other plans providing health, medical and hospital coverage to their members and/or their dependents, including B.M., and/or are administrators of plans providing such coverage, which on information and belief provide hospital and medical coverage or administrative services in New Jersey for out-of-network services, including emergency services, to patients of plaintiff, including B.M. NJBSC expects to identify these entities after conducting discovery from the named defendants.

## JURISDICTION

12.    The Court has jurisdiction over defendants because defendants EH, GHI, EHS and/or NYC conduct business in the State of New Jersey, and so derive benefits and privileges from this State, including but not limited to, (i) contracting to provide healthcare plans to residents of New Jersey, or (ii) contracting to provide or administer health benefit plans that permit members or dependents to obtain medical care in New Jersey from healthcare providers licensed by the State of New Jersey, or (iii) contracting to provide utilization and management services that permit members or dependents to obtain medical care in New Jersey from healthcare providers licensed in the State of New Jersey, and so are subject to New Jersey law, regulation and oversight governing defendants' health insurance plans.

4

ESX-L-005696-18   08/13/2018 3:11:03 PM   Pg 5 of 20 Trans ID: LCV20181401261

13.    The medical services at issue in this matter were rendered in New Jersey and pertinent communications, documents, and payments directed to NJBSC, a resident of the State of New Jersey.

## SUBSTANTIVE ALLEGATIONS

14    At all relevant times, plaintiff NJBSC was an out-of-network, or non-participating, healthcare provider regarding defendants.

15.    In July 2017, NJBSC rendered emergency, medically necessary surgical and related medical services to patient B.M. Patient had suffered a cervical fracture and complete cervical instability. During prior surgery implanting spinal hardware, the patient was found to have a loss of lower extremity motor signals.

16.    After an emergency CT scan, a large ventral epidural hematoma was discovered. NJBSC's board certified, neurosurgeons Harshpal Singh, M.D. and Kangmin Lee, M.D. performed emergency surgery to remove the hardware, evacuated and removed the hematoma, performed laminectomies, and then re-implanted the hardware necessary to treat the patient's cervical fracture and cervical instability -- in an effort to save B.M.'s lower extremity motor signals.

17.    At all relevant times, defendants provided patient B.M. with coverage for emergency medical care, either expressly in the plan, or as required by operation of law, thus permitting the patient to seek treatment from NJBSC.

18.    Defendants knew, or should have known, that pursuant to New Jersey and federal law, statutes and regulations, NJBSC was and is required to provide emergent care to all patients, regardless of their ability to pay, or the source of payment. N.J.S.A. 26:2H-18.64. Defendants are

also aware of plaintiff's legal obligation in this regard when it perpetrated its underpayment scheme.

19.   As defendants know, the law requires defendants to hold its insured harmless and thus pay NJBSC 100% of plaintiff's billed usual, customary and reasonable ("UCR") charges, less the patient's copay, coinsurance or deductible, if any, for emergency services.  This is true under New Jersey law (N.J.A.C. 11:22-5 8, 11:24-5.3, 11:24-5.1, and 11:24-9.1(d)), New York law (10 NYCRR §98-1 13, New York Insurance Law §§4341(a), 3241(b)(1)(A) and 23 NYCRR Part 400), and federal law pursuant to the Affordable Care Act (Public Health Service Act, § 2719A (setting minimum reimbursement amounts for out-of-network emergency care)).  These laws, collectively the "Insurance Law Mandates," give rise to certain state common law claims that NJBSC has asserted in this action.

20.   The UCR fee is defined as, or is reasonably interpreted to mean, the amount that out-of-network providers, like plaintiff, normally charge to patients in the free market, i.e., without an agreement with an insurance company or other payor to reduce such a charge in exchange for obtaining access to the defendants' members and beneficiaries.  The UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience (i.e., north New Jersey neurosurgical practice).

21.   NJBSC had B.M. complete forms or other documents providing the patient's insurance information.  NJBSC also created documents detailing the procedures performed, including operative reports, insurance information and amounts due.  Plaintiff then submitted timely and proper claims to defendants, including the necessary information and supporting documents.

22.    Even though the services rendered by NJBSC were emergency, medically necessary surgical care, and covered by B.M.'s health benefits plan as a matter of law (as evidenced by defendants' partial payments), defendants systematically failed to issue proper reimbursement for the services rendered by NJBSC to defendants' insured, B.M.

23.    For the neurosurgical services rendered by Doctors Singh and Lee, defendants issued payments of $77,018.20 and $6,764.72, respectively (22% of the billed charges). Shockingly, defendants' position is that insured W.M. and patient B.M. are "responsible" for the unpaid balance of $286,967.06.    Defendants only rationalization for the extremely low reimbursement was that NJBSC is an out-of-network provider.

24.    Significantly, in issuing partial payment, defendants' Explanation of Benefit statements ("EOBs") *admit* that: "If services were received during emergency room treatment/admission or in a network facility, you may be due further payment."  Despite this admission, defendants have failed to follow through with the "further payment" required due to the services being emergency care.  Instead, defendants downgraded the patient's emergency coverage.

25.    After NJBSC's claims for the subject patient and services were underpaid, W.M., B.M. and/or NJBSC filed unsuccessful appeals of defendants' gross underpayments.  With respect to the patient and claims referenced above, defendants' administrative remedies were exhausted by filing unsuccessful appeals.  N.J. Ct. R. 4:5-8(b); Fed. R. Civ. P. 9(c).

26.    Further, defendants' appeal process is futile, and plaintiff has not been provided access to a meaningful review process.  W.M., B.M. and/or NJBSC made repeated and exhaustive efforts to address defendants' systematic failure to issue proper payment or comply

7

with applicable laws.  However, defendants refused to issue proper payment, to respond to communications or to alter their policy with respect to the claims at issue in this matter.

27.     Despite the applicable laws, statutes and regulatory schemes that require defendants to pay NJBSC its billed UCR charges when emergency surgical and medical services are rendered, so that the patients are not balanced billed, and which defendants acknowledge apply to them and their course of dealings with NJBSC, defendants refused to appropriately reimburse plaintiff.

28.     Defendants are also required to make payment to plaintiff within the time period set forth in the relevant New Jersey "prompt pay" laws, *i.e.*, 30 days for electronic claims and 40 days for non-electronic claims for all services.  Under these statutory and regulatory schemes, interest of 12% is due to plaintiff for late paid claims.

29.     Defendants have systematically failed to issue proper payment for the medical and surgical services rendered by plaintiff.  Instead, defendants issued gross underpayment.  In making improper payments, defendants' actions or inactions were unlawful and improper because defendants failed to calculate the *amount* of the payment in accordance with the plans of the patients and/or the requirements of applicable statutory, regulatory and/or state common law.

30.     In addition to the standard means for resolving reimbursement and payment disputes with defendants (and in an effort to avoid balance billing the patient), NJBSC, and its representatives, engaged in telephone and email communication with defendants' representatives and/or agents with regard to the claims at issue in this litigation prior to filing formal legal action.  However, defendants were non-responsive.

31.     Upon information and belief, defendants intentionally and deliberately administer the plan in a self-serving manner to lower the reimbursement for out-of-network services in

order: (i) to increase defendants' profits, because defendants their agents have a financial incentive and is compensated based on reduced reimbursement rates to out-of-network providers, like NJBSC; and/or (ii) to discourage the insured-patients from seeking treatment from the healthcare provider of their choice or need, specifically using out-of-network providers, even when patient-employees pay higher premiums in order to access the out-of-network providers, and are promised by defendant(s) access to such providers as part of their employment compensation and benefits package.

32.    For these reasons, City of New York and/or its agent(s) have a conflict of interest with the insured and breached duties it owed to the patient in processing these claims.

33.    As a matter of routine business practice, and with respect to B.M.'s bill, plaintiff NJBSC engaged in regular communications and discussions with defendants' agent(s) regarding coverage, reimbursement and other issues; plaintiff submitted its claims directly to defendant(s) and/or their agent(s); the provider submitted claims were generally processed by defendant(s) and/or their agent(s); when defendant(s) issued (under)payments, their issued direct reimbursement to NJBSC; defendant(s) and/or their agent(s) issued EOB and other statements directly to NJBSC; and NJBSC undertook and engaged in numerous appeals of defendants' coverage and reimbursement decisions.

34.    Throughout the parties' course of dealings and numerous forms of communication and interaction, defendant(s) and/or their agent(s) voluntarily and freely engaged with and dealt directly with NJBSC.  Plaintiff relied in good faith on defendants' conduct and the parties' course of dealings.

35.    Plaintiff has asserted direct claims and causes of action that are not predicated on an assignment of benefits from the patient. *See CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d

165, 178 (3d Cir. 2014); *e.g.*, *N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, No. 16-1544, 2017 WL 659012 (D.N.J. Feb. 17, 2017), *R&R adopted*, 2017 WL 1055957 (D.N.J. Mar. 20, 2017).

36.     All claims and causes of action herein arise from and/or under one or more "independent duties," unfettered by any type of ERISA preemption, including, *inter alia*: the New Jersey prompt pay laws, statutes and regulations providing private rights of action to plaintiff; and, the New Jersey and/or Insurance Law Mandates governing the reimbursement of out-of-network providers rendering emergency services providing implied contractual obligations arising from the parties' course of dealings and other operations of law.

37.     Moreover, to the extent defendants' plan is fully insured, plaintiff's statutory and regulatory causes of action pled herein are expressly "saved" from ERISA preemption as they involve laws that regulate insurance in the States of New Jersey.

38.     This lawsuit addresses defendants' failure to provide the appropriate *amount* of coverage to the patient and defendants' failure to properly *reimburse* plaintiff for its services to that patient. There is no dispute that defendants' plan provides coverage for the patient and the medical and surgical services rendered by plaintiff that are in dispute.   This is acknowledged by defendants since partial payments were made on the subject claims.

39.     The claims in this lawsuit arise from disputes over the reimbursement amounts paid by defendants (*i.e.*, partial payments), and thus do not arise under or implicate federal subject-matter jurisdiction under the Employee Retirement Income Security Act ("ERISA"). This lawsuit addresses defendants' failure to provide the appropriate amount or extent of coverage to the patient, and defendants' failure to properly reimburse plaintiff for its services to that patient. *Pascack Valley Hosp., Inc. v. Loc. 464A UCFW Welfare Reimbursement Plan*, 388

F.3d 393, 402-03 (3d Cir. 2004); *McCulloch Ortho. Surgl. Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 150-151 (2d Cir. 2017)

40.   By and through this lawsuit, NJBSC now seeks damages due to all defendants' actions as described herein and below.

## FIRST COUNT

### (Breach of Implied Contract)

41.   Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

42.   Defendants indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to NJBSC that defendants would pay for surgical and medical services provided, including the emergency services provided by NJBSC to B.M and at the correct amount.

43.   Defendants knew as a matter of law that their members and beneficiaries are entitled to be covered for out-of-network emergency care, and that they may go to any hospital emergency room when they need emergency care, and that they will only be responsible to pay the plan's copayments, coinsurance and deductibles at an in-network level when emergency services are rendered.

44.   Defendants represent that their members and beneficiaries are covered for out-of-network emergency care, and that they may go to any hospital emergency room when they need emergency care, and that they will only be responsible to pay the plan's copayments, coinsurance and deductibles at an in-network level when emergency services are rendered (notwithstanding any statement in a plan document to the contrary).

11

45.    In addition, defendant(s) were paid premiums by B.M. for out-of-network emergency healthcare coverage, and the services of NJBSC were necessary to satisfy the surgical and medical needs of defendants' member.

46.    Defendants also know that NJBSC was and is required by law to treat B.M. if the patient requires emergency or related medical care.

47.    Defendants further indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to NJBSC that defendant(s) would pay plaintiff billed charges or UCR amounts, pursuant to the Insurance Law Mandates, based upon what other healthcare providers of the same specialty in the same geographic area charge for the services rendered by NJBSC.

48.    Defendants also indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to NJBSC that they would honor, *inter alia* (a) their representations to NJBSC that preauthorization was not required, *e.g.*, emergent care, and/or (b) its payment agreement to correctly pay for services that are medically necessary.

49.    NJBSC rendered medically necessary surgical and medical services to the patient indisputably covered under defendants' healthcare plan, and in doing so, plaintiff reasonably expected defendants to properly compensate plaintiff.

50.    A reasonable person in the position of defendants would know or reasonably should have known that plaintiff was performing the services expecting that defendants would pay for them appropriately.

51.    Despite indicating to NJBSC by a course of conduct, dealings and the circumstances surrounding the relationship that defendants would properly reimburse plaintiff

for either its actual charges as an out-of-network provider or its UCR rates, defendants failed to do so.

52.     The failure of defendants to pay the reasonable value of services constitutes breach of the implied contract between defendants and NJBSC.

53.     As a direct result of this breach, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants for:

a)     Compensatory damages;

b)     Interest;

c)     Costs of suit;

d)     Attorneys' fees; and

e)     Such other relief as the Court deems equitable and just.

## SECOND COUNT

### (Breach of the Covenant of Good Faith & Fair Dealing)

54.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

55.     The law implies in every contractual relationship, including that between NJBSC and defendants, a covenant of good faith and fair dealing. Defendants are required to act in a manner that is consistent with plaintiff's reasonable expectations.

56.     Defendants acted with an improper motive and injured plaintiff's rights and benefits under the contract, and breached the contract through acts of commission and omission described herein that are wrongful and without justification.

57.     As a direct result of this breach, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants for:

13

a)   Compensatory damages;

b)   Interest,

c)   Costs of suit;

d)   Attorneys' fees; and

e)   Such other relief as the Court deems equitable and just.

### THIRD COUNT

### (Unjust Enrichment & *Quantum Meruit*)

58.   Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

59.   Defendants have enriched themselves unjustly at the expense of NJBSC.

60.   At all relevant times, defendants refused to pay NJBSC correctly for the surgical and medical services plaintiff provided to B.M. who was covered under a plan sponsored, funded, insured and/or administered by defendants, contrary to the insurance provided by the plan to the member, and contrary to the common law, statutory and regulatory obligations of defendants.

61.   Defendants were paid premiums by the member for out-of-network emergency and/or pre-authorized services coverage, pursuant to said premiums, and defendants were legally obligated to provide such coverage.

62.   To satisfy their coverage and legal obligations, defendants required the services of NJBSC to render the surgical and medical services, including emergency medical care. Plaintiff did, in fact, render such services to B.M.

63.   Defendants have, therefore, received and retained a benefit because of plaintiff rendering surgical and medical services that remain grossly underpaid. Thus, defendants have

been unjustly enriched through the use of funds that earned interest or otherwise added to their profits when said money should have been paid in a timely and appropriate manner to plaintiff.

64.    As a direct result of defendants' unjust enrichment, plaintiff has suffered damages.

**WHEREFORE**, plaintiff demands judgment against defendants for:

a)    Compensatory damages;

b)    Interest;

c)    Costs of suit;

d)    Attorneys' fees; and

e)    Such other relief as the Court deems equitable and just.

## FOURTH COUNT

### (Tortious Interference with Economic Advantage)

65.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

66.    NJBSC had a reasonable expectation of economic advantage or benefit belonging or accruing to plaintiff.

67.    Defendants knew, or reasonably should have known, of plaintiff's expectancy of economic advantage.

68.    Defendants wrongfully interfered with plaintiff's expectancy of economic advantage or benefit, as set forth *supra*.

69.    But for defendants' wrongful acts, it is reasonably probable that plaintiff would have realized its economic advantage or benefit.

70.    Thus, NJBSC has been damaged.

15

**WHEREFORE**, plaintiff demands judgment against defendants for:

a)   Compensatory damages;

b)   Interest;

c)   Costs of suit;

d)   Attorneys' fees; and

e)   Such other relief as the Court deems equitable and just.

## FIFTH COUNT

### (Violations of New Jersey Regulations Governing Payment for Emergency Services Rendered by an Out-of-Network Provider)

71.   Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

72.   New Jersey law requires that providers render emergent care to all patients, regardless of their ability to pay, or the source of payment. N.J.S.A. 26:2H-18.64.

73.   To ensure access to emergency care regardless of a patient's insurance, New Jersey insurance regulations mandate that payors determine coverage and pay promptly. Under this healthcare insurance regulatory scheme, New Jersey law requires payors to specifically notify their subscribers that they are entitled to have "access" to emergency services, and "payment of appropriate [health] benefits" for emergency conditions "24 hours a day" and "seven days a week." N.J.A.C. 11:24A-2.5(b)(2).

74.   Pursuant to New Jersey healthcare insurance regulations, when a privately-insured patient seeks emergency services, an out-of-network provider must be paid a large enough amount to ensure that the patient is not balance billed, that is, charged for the difference between the insurer reimbursed amount and the provider's billed charges. This so-called "Emergency Room Mandate" applies even if it means that the payor must pay the provider its

16

actual billed charges minus the copayments, coinsurance and deductibles that would have applied had the patient sought treatment from an in-network provider.

76. Plaintiff has a private right of action, express or implied, to prosecute its claim under these regulations.

76. Defendants are obligated to pay NJBSC one-hundred percent (100%) of plaintiff's UCR fees, less the patient's applicable copay, coinsurance or deductible for all patients admitted through the hospital emergency room, pursuant to N.J.A.C. 11:22-5.8, 11:24-5.3, 11:24-5.1, and 11:24-9.1(d).

77. Contrary to New Jersey healthcare insurance regulations, defendants have not properly paid for the emergency hospital and medical services rendered to B.M., and plaintiff's bills remain outstanding for those services that were emergent in nature.

78. As a direct result of defendants' violations of these health insurance regulations and related legal obligations, plaintiff has been damaged.

WHEREFORE, plaintiff demands judgment against defendants for

a)   Compensatory damages;

b)   Interest;

c)   Costs of suit;

d)   Attorneys' fees; and

e)   Such other relief as the Court deems equitable and just.

### SIXTH COUNT

#### (Violations of New Jersey HINT & HCAPPA)

79. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

80.   Pursuant to the Healthcare Information Networks and Technologies Act ("HINT"), N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1, and the corresponding regulations, N.J.A.C. 11:22-1, *et seq.*, defendants are required to remit payment to a healthcare provider for an "eligible" non-capitated claim for medical services no later than thirty (30) calendar days following electronic receipt of the claim by defendants, or forty (40) calendar days following non-electronic receipt of the claim by defendants. In the alternative, defendants are required to notify the provider within seven (7) calendar days of the specific reasons for a denial or dispute, and to expeditiously request any missing information or documentation required to process the claims, pursuant to the Health Claims Authorization, Processing and Payment Act ("HCAPPA").

81.   Plaintiff has a private right of action, express or implied, to prosecute its claims under HINT, HCAPPA and their regulations.

82.   All overdue payments must bear simple interest at the rate of twelve (12) percent per annum, pursuant to HCAPPA.

83.   Despite their statutory duties, defendants as a matter of practice and/or policy delayed payment of properly submitted claims from plaintiff and did not pay the claims correctly, and then did not pay interest on delayed payments. By delaying payment of a claim, defendants earned and continue to earn profits from their use of the funds, profits that they would not have earned or continued to earn if payment were made in a timely manner.

84.   NJBSC has submitted "clean" or "eligible" non-capitated claims for services rendered to B.M. that defendants failed to pay within the prescribed statutory timeperiod despite numerous attempts by plaintiff to address and resolve these issues with defendants. These practices by defendants are in violation of HINT and HCAPPA.

85.   As a direct result of defendants' violations of HINT and HCAPPA, plaintiff has been damaged.

WHEREFORE, plaintiff demands judgment against defendants for:

    a)    Compensatory damages;

    b)    Interest;

    c)    Costs of suit;

    d)    Attorneys' fees; and

    e)    Such other relief as the Court deems equitable and just.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**MAZIE SLATER KATZ & FREEMAN, LLC**
*Counsel for Plaintiff*


By: */s/ Eric D. Katz*
      ERIC D. KATZ

DATED: August 13, 2018


### DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Eric D. Katz, Esq. as trial counsel in the above matter.

**MAZIE SLATER KATZ & FREEMAN, LLC**
*Counsel for Plaintiff*


By: */s/ Eric D. Katz*
      ERIC D. KATZ

DATED: August 13, 2018

## CERTIFICATION PURSUANT TO RULE 4:5-1(b)2

ERIC D. KATZ, of full age, hereby certifies that:

1.      I am a partner with the law firm of Mazie Slater Katz & Freeman, LLC, counsel for plaintiff in this action.

2.      To the best of my knowledge, the matter in controversy is not the subject of any other action pending in any Court or any pending arbitration proceeding.

3.      No other actions or arbitration proceedings are contemplated by this plaintiff against the pled defendants at this time.

4.      I know of no other parties that should be joined in this action at this time, other than those as fictitious defendants that will be identified in the course of discovery.

I certify that the foregoing statements made by me are true.  I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ Eric D. Katz
ERIC D. KATZ

DATED:  August 13, 2018

ESX-L-005696-18   08/13/2018 3:11:03 PM  Pg 1 of 1 Trans ID: LCV20181401261

# Civil Case Information Statement

**Case Details: ESSEX | Civil Part Docket# L-006696-18**

Case Caption: NORTH JERSEY BRAIN & SPINE CT VS
EMBLEMHEALTH,

Case Initiation Date: 08/13/2018

Attorney Name: ERIC DAVID KATZ

Firm Name: MAZIE SLATER KATZ & FREEMAN

Address: 103 EISENHOWER PKY

ROSELAND NJ 07068

Phone:

Name of Party: PLAINTIFF : North Jersey Brain & Spine Ctr

Name of Defendant's Primary Insurance Company
(if known): None

Case Type: COMPLEX COMMERCIAL

Document Type: Complaint with Jury Demand

Jury Demand: YES - 6 JURORS

Hurricane Sandy related? NO

Is this a professional malpractice case?  NO

Related cases pending: NO

If yes, list docket numbers:

Do you anticipate adding any parties (arising out of same
transaction or occurrence)? NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

Do parties have a current, past, or recurrent relationship? NO

If yes, is that relationship:

Does the statute governing this case provide for payment of fees by the losing party? NO

Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:

Do you or your client need any disability accommodations? NO
        If yes, please identify the requested accommodation:

Will an interpreter be needed? NO
        If yes, for what language:

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

08/13/2018
Dated

/s/ ERIC DAVID KATZ
Signed

ESX L 005696-18  08/14/2018 4:52:01 AM  Pg 1 of 1  Trans ID: LCV20181404095

ESSEX COUNTY - CIVIL DIVISION
SUPERIOR COURT OF NJ
465 MARTIN LUTHER KING JR BLVD
NEWARK          NJ 07102

                                    TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (973) 776-9300
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:    AUGUST 13, 2018
                    RE:      NORTH JERSEY BRAIN & SPINE CT  VS EMBLEMHEALTH,
                    DOCKET: ESX L -005696 18

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

     DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE MANAGING JUDGE ASSIGNED IS:  HON KEITH E. LYNOTT

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     002
AT: (973) 776-9300.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH R 4:5A-2.
                    ATTENTION:

                              ATT: ERIC D. KATZ
                              MAZIE SLATER KATZ & FREEMAN

                              103 EISENHOWER PKY
                              ROSELAND          NJ 07068

ECOURTS